## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ROLANDA LLOYD,

                **Plaintiffs,**

-vs-

GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY,

                **Defendant.**

**Case No. 1:18-cv-01557-PAB**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION AND ORDER**

Currently pending is Defendant Greater Cleveland Regional Transit Authority's ("GCRTA") Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50 and Alternative Motion for Remittitur under Rule 59.  (Doc. No. 92.)  Plaintiff Rolanda Lloyd filed an Opposition to GCRTA's Motion on January 7, 2022, to which GCRTA replied on January 14, 2022.  (Doc. Nos. 99, 100.)  For the following reasons, GCRTA's Motion is DENIED.

## I.    Background

On July 9, 2018, Lloyd filed a Complaint in this Court against GCRTA and Jack Barnett, Jr., setting forth claims for disability discrimination in violation of the Americans with Disabilities Act and Ohio law, retaliation in violation of the Family and Medical Leave Act, and gender discrimination in violation of Title VII and Ohio law.  (Doc. No. 1.)  Lloyd subsequently amended her Complaint twice in response to Motions to Dismiss filed by Barnett.  (*See* Doc. Nos. 7, 11, 12, 16, 19, 20.)  The Second Amended Complaint set forth claims against GCRTA for (1) disability discrimination in violation of the ADA and Ohio law; (2) retaliation in violation of the FMLA; and (3) gender discrimination in violation of Title VII and Ohio law.  (Doc. No. 20 at ¶¶ 62-127.)  The Second

Amended Complaint also contained a single claim under Ohio law against Barnett for aiding and abetting GCRTA's alleged discriminatory conduct towards Lloyd. (*Id.* at ¶¶ 128-40.)

On August 27, 2020, the Court granted in part and denied in part GCRTA's and Barnett's Motion for Summary Judgment. (Doc. No. 53.) In its Memorandum Opinion and Order, the Court concluded that a genuine issue of material fact existed as to whether GCRTA's disability inquiry was overbroad under the ADA—and therefore not job-related or consistent with business necessity—and, further, that there was a genuine dispute as to whether Lloyd's refusal to comply with GCRTA's demand was a legitimate, nondiscriminatory reason for her removal from work and eventual termination of her employment. (*Id.* at PageID# 1230.) Accordingly, the Court denied summary judgment as to Lloyd's ADA and Ohio disability discrimination claims but granted summary judgment in all other respects (including dismissing Barnett as a defendant). (*Id.*)

The case proceeded to a three-day jury trial on the remaining disability discrimination claims from November 3 to November 5, 2021. At the conclusion of Lloyd's case in chief, GCRTA moved for judgment as a matter law, asserting that Lloyd failed to prove her *prima facie* case of disability discrimination. (*See* 11/5/2021 Transcript, Rule 50 Mot – 2, Line 4.) The Court denied GCRTA's motion at that time. (*Id.* at Rule 50 Mot – 7, Line 19.) GCRTA renewed its motion at the conclusion of its case in chief, which the Court again denied. (*Id.* at Exhibits RD – 48, Line 1.) On November 5, 2021, the jury returned a verdict in favor of Lloyd on both her ADA and state-law disability discrimination claims. (*Id.* at Verdict RD – 147.) The jury awarded Lloyd no compensatory damages but awarded her $105,000 in backpay and benefits. (*Id.*) The Court entered judgment in favor of Lloyd, and against GCRTA, in the amount of $105,000 that same day. (Doc. No. 86.)

On December 3, 2021, GCRTA filed the instant Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50 and Alternative Motion for Remittitur Under Rule 59.  (Doc. No. 92.) Lloyd filed her Opposition on January 7, 2022, to which GCRTA replied on January 14, 2022.  (Doc. Nos. 99, 100.)  Thus, GCRTA's Motion is ripe for a decision.

## II.    Motion for Remittitur

As discussed below, the parties' arguments for and against remittitur, as well as the Court's analysis thereof, overlap substantially with the parties' arguments for and against judgment as a matter of law.  Therefore, the Court begins by addressing GCRTA's Alternative Motion for Remittitur pursuant to Rule 59 before turning to GCRTA's Renewed Motion for Judgment as a Matter of Law.

### A.    Standard of Review

GCRTA moves in the alternative to its Motion for Judgment as a Matter of Law for remittitur of the jury's damages verdict.  Generally, the Sixth Circuit has held that "a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss."  *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990) (internal quotation omitted).  However, a court may exercise its discretion to remit a verdict in some circumstances.  According to the Sixth Circuit,

> A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the conscience of the court.  *Jones v. Wittenberg University, supra; Hines v. Smith,* 270 F. 132 (6th Cir.), *cert. denied,* 255 U.S. 576, 41 S.Ct. 448, 65 L.Ed. 794 (1921).  If there is any credible evidence to support a verdict, it should not be set aside.  *Wertham Bag Co. v. Agnew,* 202 F.2d 119 (6th Cir. 1953).  The trial court may not substitute its judgment or credibility determinations for those of the jury.  Moreover, it abuses its discretion in ordering either a remittitur or new trial when the amount of the verdict turns upon conflicting evidence and the credibility of witnesses.  *Hewitt v. B.F. Goodrich,* 732 F.2d 1554 (11th Cir.1984); *Cross v. Thompson,* 298 F.2d 186 (6th

3

Cir.1962); *Duncan v. Duncan,* 377 F.2d 49 (6th Cir.1967), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967).

*Id.*

A district court may not unilaterally remit a damages verdict.  Rather, if a district court remits a damages verdict, it must offer the awardee the choice between the amount of the court's remittitur or a new trial.  *Brewer v. Uniroyal, Inc.*, 498 F.2d 973, 976 (6th Cir. 1974); *see also Farber*, 917 F.2d at 1396 (". . . a forced remittitur without the offer of the option of a new trial on the issue of damages constitutes error, requiring this court to reverse and reinstate the verdict."); *see also* 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2815 (3d ed.) ("There is, nevertheless, a practice, now sanctioned by long usage, by which the court may condition a denial of the motion for a new trial upon the filing by the plaintiff of a remittitur in a stated amount. In this way the plaintiff is given the option of either submitting to a new trial or of accepting the amount of damages that the court considers justified.").

### B.    Analysis

GCRTA moves only for remittitur under Fed. R. Civ. P. 59.  (*See* Doc. No. 92, PageID# 1606.) GCRTA does not move in the alternative for a new trial under Rule 59.

GCRTA argues that remittitur is warranted because the $105,000 of backpay damages "is beyond the range supportable by proof and may have resulted from the jury's sympathy, passion and bias in wanting to compensate Plaintiff because her son was murdered."  (*Id.* at PageID# 1614.) GCRTA further argues that "[i]f the jury concluded that Mr. Frinzl asked [Lloyd] to sign an overly broad medical release and pulled her from work for refusing to sign the release, her damages would run until GCRTA provided her with an opportunity to provide medical information from her physician (in lieu of signing the release)."  (*Id.*)

4

GCRTA contends that "Plaintiff's damages should be remitted from 17 months of back pay to when she was provided with alternative avenues to address GCRTA's legitimate concerns about her PTSD . . . ." (*Id.*)  GCRTA offers three possibilities for remittitur:

- Remitting damages to one month of back pay, based on Ferraro's 9/26/2016 letter encouraging Lloyd to ask her physician to submit a note stating she could return to work;

- Remitting damages to seven months of back pay, based on Fields's 3/31/2017 letter encouraging Lloyd to "submit additional medical evidence" for GCRTA's review prior to Lloyd's six month absence meeting; or

- Remitting damages to nine months of back pay, based on Fields's 5/31/2017 letter encouraging Lloyd to "submit additional medical evidence" for GCRTA's review prior to Lloyd's termination meeting.

(*Id.* at PageID# 1615.)  GCRTA offers no argument, and cites to no evidence to support any argument, regarding the possibility that the jury's verdict may have been the result of sympathy, passion, and/or bias or that the damages shock the conscience.

Lloyd opposes GCRTA's Alternative Motion for Remittitur.  (Doc. No. 99, PageID# 1872.) First, Lloyd asserts that the Court cannot order remittitur because Lloyd does not consent to it. According to Lloyd, GCRTA "wholly ignores a key element of remittitur: the power to reduce a verdict is conditional on the consent of the prevailing party." (*Id.* at PageID# 1873, internal quotation omitted.)  Lloyd argues that entering judgment for a lesser amount than that determined by the jury without allowing the awardee the option of a new trial cannot be squared with the Seventh Amendment.  (*Id.*)  According to Lloyd, without her consent, remittitur is not available.  (*Id.* at PageID# 1874.)  Thus, Lloyd argues (without citation), "because [GCRTA] did not timely move in the alternative for a new trial, the threat of a new trial cannot be used to leverage Lloyd into accepting remittitur." (*Id.*)

5

Second, Lloyd asserts that the evidence adduced at trial fully supports the $105,000 in back pay damages to Lloyd, as it covers the 17-month window in which GCRTA kept her from work between August 2016 and January 2018.  (*Id.*)  Lloyd argues that GCRTA's remittitur argument is based on the same "multiple avenues" argument set out in GCRTA's Renewed Motion for Judgment as a Matter of Law.  (*Id.*)  Regarding the three possible remittitur dates, Lloyd argues:

- With respect to Ferraro's 9/26/2016 letter requesting a physician's note indicating that Lloyd could return to work, Lloyd provided a letter from her physician, Dr. Dubey, on 10/4/2016 indicating that Lloyd could work without restrictions, but that GCRTA "consciously disregarded the very return-to-work note asked for and provided by Lloyd in October 2016";

- With respect to Fields's 3/31/2017 and 5/31/2017 letters requesting Lloyd "submit additional medical evidence," Lloyd demonstrated at trial that "these supplemental requests were not only hollow, but irrelevant given the fact that Lloyd had already submitted a full return-to-work (without restrictions) in October 2016 and yet was not allowed to return to work (despite Ferraro's representation otherwise)," and, therefore, the jury was presented with evidence that "there was no additional medical evidence to submit other than Lloyd blindly signing the overly broad medical release."

(*Id.* at PageID# 1875.)

On Reply, GCRTA argues that Lloyd puts the horse before the cart when she asserts that her blanket denial of consent to remittitur strips the Court of its ability to order remittitur.  (Doc. No. 100, PageID# 1937.)  GCRTA asserts that if this Court determines "that remittitur is appropriate under Rule 59 . . ., it will (at that time) provide Plaintiff with an option of accepting the remittitur or insisting on a new trial."  (*Id.*)  GCRTA does not address Lloyd's argument that the Court cannot order a new trial because GCRTA did not move in the alternative for one.

GCRTA also argues that the Court already found, as a matter of law, that Dr. Dubey's 10/4/2016 letter failed to address Frinzl's concerns about Lloyd's episodic flare-ups, did not indicate the type of mood disorder Lloyd suffered from, did not indicate whether Lloyd was suicidal or homicidal, and, thus, did not undermine the reasonableness of continuing to withhold Lloyd from

work.  (*Id.*, citing 8/27/2020 MOO.)  Therefore, according to GCRTA, Lloyd's "refusal to provide any additional medical information about her episodic flare-ups, despite multiple requests and avenues for providing such information, necessitates remittitur."  (*Id.*)

If the Court grants GCRTA's Motion for Remittitur, the Court must offer Lloyd the choice between remittitur and a new trial.  *Farber*, 917 F.2d at 1396.  However, GCRTA did not timely move for a new trial under Rule 59.  Thus, there is no motion for a new trial pending before this Court and any order for a new trial would therefore be done *sua sponte* on the Court's own initiative.  Rule 59(d) sets out two circumstances under which a court may order a new trial on its own initiative. *Lesende v. Borrero*, 752 F.3d 324, 334 (3d Cir. 2014).  First, a court may, on its own, order a new trial for any reason that would justify granting one on a party's motion if the court enters its order within 28 days of entry of judgment.  *Id.*; *see also Park West Galleries v. Hochman*, 692 F.3d 539, 544 (6th Cir. 2012) ("A district court may also order a new trial on its own for 'any reason that would justify granting one on a party's motion.'").  Second, a court may grant a timely motion for a new trial for any reason not stated in the motion for new trial, so long as the court gives the parties notice and an opportunity to be heard regarding the court's rationale.  *Id.*

*Lesende v. Borrero* illustrates Rule 59(d)'s limitations on a court's jurisdiction to consider the propriety of a new trial on its own initiative.  In *Lesende*, a jury awarded the plaintiffs $2.7 million in compensatory damages.  *Lesende*, 752 F.3d at 327.  One defendant moved for a new trial as to damages only or, alternatively, for remittitur.  *Id.*  "In an apparent overabundance of caution," the district court couched its denial of a new trial in terms of *both* damages *and* liability—even though the defendants did not move for a new trial on liability.  *Id.* at 330.  On appeal, the defendant argued that it was entitled to a new trial as to liability, in part because the district court considered the issue.

7

*Id.* at 334.  The Third Circuit disagreed.  *Id.*  The Third Circuit concluded that the district court did not comply with Rule 59(d)'s jurisdictional and procedural requirements and, therefore, lacked the power to *sua sponte* consider the propriety of a new trial as to liability.  *Id.*  First, the district court failed to enter its memorandum opinion within 28 days and so lacked jurisdiction under the first sentence of Rule 59(d) to consider the propriety of a new trial as to liability *sua sponte*.  *Id.*  Second, the record demonstrated that the district court did not provide the plaintiffs notice and an opportunity to be heard on the issue of a new trial as to liability and so also lacked jurisdiction under the second sentence of Rule 59(d).  *Id.*

GCRTA's instant Motion for Remittitur presents the following issue: where GCRTA failed to move for a new trial, and Lloyd will not consent to remittitur, would the Court have jurisdiction to order a new trial *sua sponte* more than 28 days after entry of judgment?

As an initial matter, there appears to be no case law that squarely addresses this issue.  This jurisdictional issue likely never arises because moving parties typically combine a motion for remittitur with a motion for new trial.  *See, e.g., Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 440 (6th Cir. 2020); *Moore v. Freeman*, 355 F.3d 558 (6th Cir. 2003)[1]; *Zander v. Katz, Sapper & Miller*, No. 3:12-cv-967, 2015 WL 136819, at *1 (M.D. Tenn. Jan. 8, 2015); *Mid-Michigan Computer Sys., Inc. v. Marc Glassman, Inc.*, 416 F.3d 505 (6th Cir. 2005)[2]; *Coal Resources, Inc. v. Gulf & W. Indus., Inc.*, 954 F.2d 1263, 1269 (6th Cir. 1992).  Indeed, in nearly all remittitur cases the Court reviewed—including GCRTA's own cited cases—the moving parties moved for *both* a new trial or, alternatively, remittitur.

---

[1] According to the district court's docket, Defendant City of Chattanooga filed a motion captioned as a motion for judgment notwithstanding the verdict, remittur or for new trial on 8/20/2001.  *See Moore, et al. v. Freeman, et al.*, Case No. 1:00-cv-00072, ECF Doc. No. 44-1.  The motion is not available through PACER.

[2] *See* N.D. Ohio Case No. 00-cv-3117, ECF Doc. No. 292, Defendant's Motion for New Trial and Remittitur.

In one case from the Southern District of Ohio, *Corbin v. Steak 'n Shake, Inc., et al.*, the defendant moved *solely* for remittitur under Rule 59(e).  *Corbin v. Steak 'n Shake, Inc., et al.*, No: 2:17-cv-1043, 2020 WL 1899124, at *9 (S.D. Ohio Apr. 17, 2020), *aff'd* 861 Fed. App'x 639 (6th Cir. 2021).  Ultimately, the *Corbin* court denied the motion for remittitur on the merits and did not address the parties' arguments regarding the court's jurisdiction to order a new trial more than 28 days after entry of judgment when the defendant had not timely moved under Rule 59.  *Id.* at *9. However, the *Corbin* parties' arguments merit a brief discussion as they illustrate the problem that arises when a losing party moves only for remittitur under Rule 59.

In her opposition, the plaintiff argued that the court lacked jurisdiction to order a new trial because the defendant failed to timely move for a new trial under Rule 59(d) and, therefore, the court was foreclosed from granting the motion for remittitur because it lacked the power to order a new trial.  *Id.*, Ptf's Opp., ECF Doc. No. 97, PageID# 2198-2200.  In their reply, the defendants argued that a motion for new trial was not required because Rule 59 permits a party to file a motion for a new trial, a court to *sua sponte* order a new trial, *or* a party to file a motion to alter or amend the judgment.  *Id.*, Def's Rep., ECF Doc. No. 99, PageID# 2247.  The defendants asserted that a party is permitted to file a motion to alter or amend the judgment without filing a motion for new trial.  *Id.* at PageID# 2248.

There are two takeaways from the *Corbin* parties' arguments.  First, it is notable that neither party cited any case law to support their respective arguments.  Their lack of citations suggests a dearth of case law on this issue.  Second, though the defendants' assertions of law were correct, the defendants sidestepped the underlying question: when a plaintiff refuses remittitur, does a court have the jurisdiction to *sua sponte* order a new trial more than 28 days after entry of judgment when the

defendant has not otherwise moved for a new trial?  The defendants' avoidance of the question suggests that it should be answered in the plaintiff's favor.

One other case, *Lucky Break Wishbone Corp. v. Sears, Roebuck and Co.*, briefly addressed in a footnote whether a court has jurisdiction to order a new trial when a party moved only for remittitur under Rule 59.  In *Lucky Break*, the court held a five-day trial on two copyright infringement claims. *Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., et al.*, No. C06-312Z, 2008 WL 4742206, at *1 (W.D. Wash. Oct. 24, 2008).  The jury awarded actual damages and profits attributable to the infringement to the plaintiff.  *Id.*  The defendants moved for judgment as a matter of law as to the jury's finding of infringement and calculation of damages, or, alternatively, remittitur of the awards on both infringement claims.  *Id.*  In its opinion denying the defendants' motion for remittitur, the court observed that:

> . . . For presumably tactical reasons, Sears has not combined its motion for judgment as a matter of law with an alternative motion for new trial; Sears asks **only** for remittitur of the verdict amount. The Court has nevertheless considered whether the absence of evidence concerning functionality would warrant a new trial, which the Court could grant *sua sponte* after providing the parties notice and an opportunity to be heard. *See* Fed. R. Civ. P. 59(d). The Court is not, however, persuaded that a new trial is justified.

*Id.* at *3 n.1 (emphasis added).

The *Lucky Break* court's interpretation of Rule 59(d) conflicts with the plain text of Rule 59(d).  It appears the court interpreted Rule 59(d) to allow it to *sua sponte* grant a new trial after 28 days so long as it provided the parties notice and an opportunity to be heard.  *See* Fed. R. Civ. P. 59(d) ("After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion.").  This conflicts with Rule 59(d)'s second sentence, "the court may grant **a timely motion for a new trial** for a reason not stated in the motion." Fed. R. Civ. P. 59(d).  Rule 59(d)'s second sentence presupposes that a party already moved for a

new trial but allows a court to grant the motion for any reason the court sees fit—so long as the court provides the parties with notice and the opportunity to be heard, if the court intends to grant the motion based on its own rationale. *Id.*

Finally, the description of "remittitur" in Wright & Miller's Federal Practice and Procedure is also notable. The treatise describes "remittitur" as "a practice, now sanctioned by long usage, by which the court *may condition a denial of the motion for a new trial* upon the filing by the plaintiff of a remittitur in a stated amount. In this way the plaintiff is given the option of either submitting to a new trial or of accepting the amount of damages that the court considers justified." 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2815 (3d ed.) (emphasis added). This description suggests that, generally, the possibility of remittitur is dependent upon the existence of a motion for new trial.

The Court concludes it lacks jurisdiction under Rule 59 to order a new trial in the event that Lloyd rejects remittitur and is therefore foreclosed from granting GCRTA's Motion for Remittitur. As discussed above, there is almost no case law that addresses this issue. The only case to do so, *Lucky Break*, addressed the issue in a footnote. *See Lucky Break*, 2008 WL 4742206, at *3 n.1. Further, the *Lucky Break* court appeared to conflate Rule 59(d)'s two separate bases for ordering new trials. *Id.* The *Lucky Break* footnote does not persuade this Court that it may *sua sponte* order a new trial in response to a motion *only* for remittitur more than 28 days after entry of judgment, especially in light of the plain language of Rule 59(d). Because GCRTA did not timely move for a new trial here, any order for a new trial would necessarily be done *sua sponte* by this court. Rule 59(d) is clear that a court may only *sua sponte* order a new trial within 28 days of entry of judgment. The Court issues its Memorandum Opinion and Order far beyond Rule 59(d)'s 28-day deadline.

11

GCRTA fails to address Lloyd's argument that this Court cannot order a trial because GCRTA did not timely move for a new trial within 28 days of judgment.  (Doc. No. 100.)  Instead, GCRTA argues that Lloyd puts the cart before the horse by insisting that the Court must deny GCRTA's Motion because Lloyd does not consent to remittitur.  (*Id.* at PageID# 1938.)  GCRTA urges this Court to grant the Motion and put the choice to Lloyd: remittitur or new trial.  (*Id.*)  However, it remains that the Court may order a new trial only under certain circumstances, either by granting a party's motion for new trial, or *sua sponte* within 28 days of entry of judgment.  *See* Fed. R. Civ. P. 59.  Based on the plain language of Rule 59(d) and the absence of any case law on the matter, the Court concludes it lacks the jurisdiction to order a new trial and is therefore foreclosed from granting GCRTA's Alternative Motion for Remittitur.

Assuming *arguendo* that the Court has the jurisdiction to order *sua sponte* a new trial more than 28 days after entry of judgment, the Court nevertheless concludes that GCRTA's Motion for Remittitur fails on the merits because credible evidence exists to support the verdict.  The evidence adduced at trial demonstrated both that GCRTA offered Lloyd alternative avenues to present medical documentation, but also that GCRTA may have been insincere about its willingness to accept documentation through alternative means and nevertheless relied on Lloyd's refusal to sign the overbroad medical release in its termination decision.

Evidence adduced at trial demonstrated that, as GCRTA argues in its Motion, GCRTA offered Lloyd alternative avenues for demonstrating that she was fit to return to work as a train operator.  For example, Scott Ferraro, GCRTA's Director of Labor and Employee Relations, sent Lloyd a letter on 9/26/2016 explaining that GCRTA could not clear Lloyd to work as an operator and that Lloyd

12

refused to provide East Side Occupational Health with "the requested medical history."  (Doc. No. 99-1, PageID# 1893.)  Ferraro ended his 9/26/2016 letter with the following paragraph:

> **If your physician clears you to return to work without restrictions, please contact Matia Phillips in Occupational Health immediately, so GCRTA may process your return to work.**  . . . If you decide to have your physician provide your medical history for further consideration in your ability to work as Operator, please submit to East Side Occupational Health for review.

(*Id.*, emphasis added.)

There is also evidence that Lloyd never responded to Dr. Dubey's requests for psychiatric records in Fall 2016 and early Winter 2017, despite remaining out of work.  (Doc. No. 90, PageID# 1554-55; *see also* Doc.No. 100-2, PageID# 1978.)  Such evidence could have undermined Lloyd's credibility with the jury.

With respect to her six-month absence and pre-termination meetings, Lloyd admitted that GCRTA offered her the opportunity to "submit additional medical evidence" at each meeting, but that she did not provide such information at either time.  (*Id.* at PageID# 1558-59; *see also* 5/31/2017 Letter,[3] Doc. No. 100-2, PageID# 1975.)  Lloyd also admitted that she did not think to sign the medical release between October 2016 and January 2018, or to give Dr. Dubey her psychiatrist's records, or to ask her psychiatrist, Dr. Chentow, to write a note to GCRTA indicating that Lloyd was not homicidal or suicidal, so that she could return to work.  (*Id.*)

However, there was also evidence adduced at trial upon which the jury could conclude that GCRTA did not intend to reinstate Lloyd to work, fired her because she failed to sign an overbroad medical release, and ignored a medical release letter that otherwise conformed to GCRTA's requirements.  First, when questioned on cross-examination about whether his 9/26/2016 letter that

---

[3] The March 2017 six-month absence meeting letter was admitted at trial, but neither party submitted a copy of the letter with their briefing here.

read "If your physician clears you to return to work without restrictions, please contact Matia Phillips in Occupational Health immediately, so GCRTA may process your return to work," meant that Lloyd could return to work if she submitted a letter in which her doctor cleared her without restrictions, Ferraro said "No."  (Ferraro Cross Examination, Doc. No. 96, PageID# 1657-58.)  Ferraro testified that his "letter says we would complete our return-to-work process, which means having this information sent to our physicians at East Side Occupational Health for their review." (*Id.*)  However, when pressed about whether the text of Ferraro's letter matched Ferraro's interpretation, Ferraro conceded that his interpretation was "not in the letter, no."  (*Id.* at PageID# 1658.)  Later in his cross examination, Ferraro again testified that his 9/26/2016 letter referred to a "return-to-work process." (*Id.* at PageID# 1678.)

It is conceivable that a jury could interpret Ferraro's cross-examination testimony to be an attempt to "hide the ball" when it came to the documentation required to return Lloyd to work. Ferraro repeatedly insisted that, despite the plain language of his letter ("[i]f your physician clears you to return to work without restrictions, please contact Matia Phillips in Occupational Health immediately, so GCRTA may process your return to work"), he meant that Lloyd's physician's clearance was only the first step in a "return-to-work process." (*Id.* at PageID# 1657-59, 1678.)  The jury could have determined Ferraro's credibility to be low, and that Ferraro had no intention of accepting any medical certification from Lloyd whatsoever, after he asserted that his letter meant something other than what was written on the page.

Second, there is also evidence that, in response to Ferraro's 9/26/2016 letter, Lloyd submitted a 10/4/2016 letter from Dr. Dubey in which he wrote that "Ms. Lloyd has no restrictions that prevent her from performing the duties required of her employment."  (*See* Doc. No. 99-1, PageID# 1894.)

14

It is possible that the jury read this 10/4/2016 letter as a complete response to GCRTA's request for medical clearance from a physician—i.e., that Lloyd complied fully with Ferraro's suggested alternative by submitting a physician's clearance.  It is undisputed that GCRTA did not reinstate Lloyd after receipt of this 10/4/2016 letter. The jury could have concluded that, despite Lloyd's apparent compliance with Ferraro's 9/26/2016 letter, GCRTA had no intention of reinstating Lloyd, irrespective of any alternative medical information she submitted.

GCRTA argues that this Court already found as a matter of law that the 10/4/2016 letter failed to address GCRTA's third-party medical examiner Dennis Frinzl's ongoing concerns about Lloyd's flare-ups and did not undermine the reasonableness of continuing to withhold Lloyd from work. (Doc. No. 100, PageID# 1938.)  However, the 10/4/2016 letter was presented to the jury during the trial.  Neither party requested, nor did the Court provide, any limiting instruction on the jury's consideration of this letter or offer any other indication that the jury should not consider the 10/4/2016 letter as a potentially reasonable and compliant response to Ferraro's request for a doctor's clearance. There are also no jury interrogatories, so it is impossible to know whether the jury believed that the 10/4/2016 letter complied with GCRTA's request for a medical clearance, or whether the jury found the 10/4/2016 letter to be insufficient but nevertheless concluded that GCRTA had no intention of hiring Lloyd back for one of the other possible reasons discussed herein.

Third, evidence adduced at trial indicated that one of GCRTA's stated reasons for terminating Lloyd's employment was because she refused to sign the overbroad medical release.  Lloyd's 6/14/2017 termination letter reads, in relevant part, as follows:

> GCRTA's records indicate that you have been unable to perform in your position of employment as a Rail Operator . . .  on a regular basis since August 30, 2016.  Your absence exceeded six months after March 2, 2017.  Please note that we have confirmed that your original date of injury was September 14, 2015.  At the hearing, we discussed

15

the fact that you do not have a full-duty release to return to work at this time.  **Further, you have not submitted the required medical release form, requested by Eastside Occupational Health Center, to determine your return to work status.**

Therefore, in accordance with the GCRTA Attendance Policy . . . you are separated effective the date of this letter.

(Doc. No. 99-1, PageID# 1895, emphasis added.)  The plain language of this letter indicates that the (overbroad) "required medical release form" was a "further" requirement that Lloyd must meet to be reinstated.  It is conceivable that a jury could interpret this letter to mean that GCRTA considered this overbroad "required medical release form" to be a further requirement to maintain her job, regardless of whether Lloyd submitted additional medical information at her April and June 2017 absence meetings.

Finally, there was evidence adduced at trial that suggested that GCRTA had no intention of ever reinstating Lloyd, even after it received medical documentation that fully complied with GCRTA's requirements.  Ferraro testified that, after Lloyd's termination in June 2017, he received Lloyd's 1/30/2018 letter from Dr. Dubey which certified Lloyd to return to work.  (Doc. No. 96, PageID# 1679.)  Despite receiving Lloyd's fully compliant medical certification, Ferraro testified that he took no action towards reinstating Lloyd's employment.  (*Id.*)  The evidence further demonstrated that at some point after her June 2017 termination, Lloyd filed a grievance with her union and sought to be reinstated through an arbitration process against GCRTA.  (Doc. No. 98, PageID# 1834-35.)  Lloyd testified that the arbitration between herself and GCRTA took place some time around May 2018.  (*Id.* at PageID# 1836.)  Thus, the evidence demonstrated that even though GCRTA received a fully compliant medical release from Lloyd on 1/30/2018, it refused to reinstate Lloyd to her job as a train operator and instead participated in an arbitration in May 2018 to prevent Lloyd from being reinstated. Further, Lloyd testified that at the close of her wrongful termination

16

arbitration, the arbitrator awarded Lloyd backpay to 1/30/2018, the date upon which she provided her compliant medical certification to GCRTA.  (Doc. No. 90, PageID# 1568.)  It is conceivable that the jury interpreted Ferraro's refusal to consider Lloyd's 1/30/2018 medical certification and Lloyd's subsequent reinstatement (with backpay correlated to the date that Lloyd provided her medical certification) to demonstrate that GCRTA had no intention of rehiring Lloyd, even if she submitted an acceptable medical certification.

While there is evidence, as GCRTA asserts, that Lloyd did nothing to pursue the three alternative avenues it offered to submit medical documentation, the Court concludes there is evidence that GCRTA disregarded Lloyd's 10/4/2016 letter, terminated her because she failed to sign the overbroad medical release, and had no intention of accepting competent medical documentation once it was submitted.  The Court may not set aside a verdict if there is *any* credible evidence to support it.  *Farber*, 917 F.2d at 1395.  Additionally, how the jury interpreted this evidence also hinges on the jury's credibility assessments of the witnesses.  For example, the jury may have found Ferraro's strained interpretation of his own 9/26/2016 letter less credible than Lloyd's testimony regarding her failure to follow up with Dr. Dubey.  The Court cannot reassess witnesses' credibility on a motion for remittitur.  *Id.*  It should be left to the jury to decide whether GCRTA was insincere about its willingness to accept alternative medical documentation.  Accordingly, GCRTA's Motion for Remittitur is denied.

## III.    Motion for Judgment as a Matter of Law

### A.    Standard of Review

GCRTA renews its motion pursuant to Rule 50(b) for judgment as a matter of law.  (Doc. No. 92.)  Rule 50(a), which governs judgment as a matter of law, provides:

**(1)** ***In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

**(A)** resolve the issue against the party; and

**(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). According to Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).

When considering a motion for judgment as a matter of law, a court must consider the evidence in the light most favorable to the nonmoving party, "giving that party the benefit of all reasonable inferences." *Tuck v. HCA Healthcare*, 7 F.3d 465, 469 (6th Cir. 1993). A court may not weigh the credibility of witnesses or consider the weight of the evidence. *Howe v. City of Akron*, 789 F. Supp. 2d 786, 796 (N.D. Ohio 2010) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1163 (6th Cir. 1990)). "Such a motion should only be granted where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Braun v. Ultimate JetCharters, Inc.*, No. 5:12-cv-1635, 2014 WL 3749418, at *3 (N.D. Ohio July 30, 2014) (quoting *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007)).

**B.    Analysis**

GCRTA argues that judgment as a matter of law is appropriate because Lloyd failed to produce sufficient evidence to establish disability discrimination. (Doc. No. 92, PageID# 1606.) GCRTA argues that no reasonable fact finder could conclude that Lloyd suffered an adverse employment action because it had a right to request Lloyd's medical records about her PTSD, and

because GCRTA's eventual termination of Lloyd's employment for refusing to provide such information was not, as a matter of law, an adverse employment action.  (*Id.* at PageID# 1606-10.) Specifically, GCRTA argues that it had the right to request a medical examination because Lloyd requested a disability accommodation and also because GCRTA had a reasonable belief to question whether Lloyd posed a direct threat to herself or others.  (*Id.* at PageID# 1607-08.)  GCRTA further argues that the testimony at trial established that GCRTA provided Lloyd with "multiple avenues for addressing GCRTA's safety concerns" and that GCRTA did not terminate her because she refused to sign the release.  (*Id.* at PageID# 1611.)  GCRTA further argues that no reasonable fact finder could conclude that GCRTA's legitimate, non-discriminatory reason for terminating Lloyd's employment was pretext for unlawful discrimination.  (*Id.* at PageID# 1612-13.)  Specifically, GCRTA argues that "there was no evidence presented at trial to indicate that" Lloyd "was terminated for refusing to sign an overly broad release."  (*Id.* at PageiD# 1613.)

In her Opposition, Lloyd argues that GCRTA's argument that Lloyd did not suffer an adverse employment action is "frivolous" because GCRTA not only terminated Lloyd but also placed her on a lengthy involuntary leave without pay between August 2016 and June 2017.  (Doc. No. 99, PageID# 1861-62.)  Lloyd further argues that GCRTA's "right" to request medical records has never been disputed in this case.  (*Id.* at PageID# 1865.)  Rather, the issue at trial was whether GCRTA's records request was overbroad and unreasonable.  (*Id.*)  Lloyd asserts that the evidence at trial demonstrated that GCRTA repeatedly requested the same overbroad medical records request until she was terminated in June 2017, as evidenced by her termination letter, which explicitly set out that Lloyd's termination was due, in part, to her failure to submit the required medical release.  (*Id.* at PageID# 1866.)  Lloyd also argues that GCRTA presented no law or evidence at trial that the scope of its

19

request was reasonable as a matter of law, thus eliminating any genuine issue of material fact as to whether the request was overbroad.  (*Id.*)  Lloyd argues that GCRTA presented no credible evidence that it would have returned Lloyd to active duty if she complied with GCRTA's supposed alternative avenues.  (*Id.* at PageID# 1869.)  Finally, Lloyd argues that it was within the exclusive province of the jury to determine whether the justifications for Lloyd's termination were pretextual and their conclusions ought not to be disturbed.  (*Id.* at PageID# 1870-71.)

An "employer bears the burden of proving that a medical examination is job-related and consistent with business necessity by demonstrating that: '(1) the employee requests an accommodation; (2) the employee's ability to perform the essential functions of the job is impaired; or (3) the employee poses a direct threat to himself or others.'"  *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Denman v. Davey Tree Expert Co.*, 266 Fed. App'x 377, 379 (6th Cir. 2007)).  An "examination ordered for valid reasons can neither count as an adverse job action nor prove discrimination."  *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 813 (6th Cir. 1999).

However, "any examination ordered by the employer must be restricted to discovering whether the employee can continue to fulfill the essential functions of the job."  *Id.*  A fitness-for-duty examination "is not an excuse for every wide-ranging assessment of mental or physical debilitation that could conceivably affect the quality of an employee's job performance."  *Id.*  To the extent that "an employer's medical-examination request or disability-inquiry demand are unlawful, an employee's refusal to relent to such unlawful requests does not constitute a legitimate, nondiscriminatory reason for taking adverse employment action against that employee. Rather, it is

20

the opposite: an illegitimate and unlawful reason." *Jackson v. Regal Beloit Am., Inc.*, No. 16-134-DLB-CJS, 2018 WL 3078760, at *9 (E.D. Ky. June 21, 2018).

The Court concludes that GCRTA's Renewed Motion for Judgment as a Matter of Law is not well-taken.  As noted above, there is substantial overlap between GCRTA's arguments in favor of its Alternative Motion for Remittitur and the instant Renewed Motion for Judgment as a Matter of Law. Therefore, the Court's above analysis of the evidence adduced at trial applies with equal force to its analysis of the parties' arguments regarding the sufficiency of the evidence below.

First, the Court disagrees with GCRTA's assertion that there was no evidence at trial to support Lloyd's claim that GCRTA terminated her employment for refusing to sign the release.  (Doc. No. 92, PageID# 1610.)  It is undisputed that GCRTA was entitled to require Lloyd to undergo a fitness exam and inquire into her medical records to determine whether she was a threat to public safety.  (*See* Doc. No. 53, PageID# 1227; Doc. No. 99, PageID# 1865.)  However, GCRTA adduced no evidence at trial that its medical release form was *not* overbroad.  Further, in its termination letter to Lloyd, GCRTA clearly indicated that one of its reasons for terminating Lloyd's employment was that she had "not submitted the required medical release form, requested by Eastside Occupational Health Center, to determine [her] return to work status." ((Doc. No. 99-1, PageID# 1895.)  In other words, GCRTA unambiguously informed Lloyd that one of the reasons for her termination was her failure to sign the overbroad medical release.

Additionally, as discussed above, evidence at trial suggested both that GCRTA provided Lloyd with alleged "multiple avenues for addressing GCRTA's safety concerns," and also that GCRTA had no intention of accepting alternative medical certifications, including the 10/4/2016 letter, irrespective of whether Lloyd signed the overbroad release or not.  *See supra.*  Moreover,

21

Ferraro's testimony about his intended meaning of the 9/26/2016 letter conflicted with the plain language within the letter. *Id.*  He also testified that he did nothing with Lloyd's fully compliant 1/30/2018 medical release. *Id.*  The Court concludes that there was sufficient evidence presented at trial upon which the jury could conclude that Lloyd suffered an adverse employment action.

The Court further concludes that the jury reasonably concluded that GCRTA's proffered legitimate, non-discriminatory reason for terminating Lloyd's employment was pretext for unlawful discrimination based on disability.  GCRTA is incorrect that "there was no evidence presented at trial to indicate that [Lloyd] was terminated for refusing to sign an overly broad release."  (Doc. No. 92, PageID# 1613.)  The 6/14/2017 termination letter unambiguously lists Lloyd's failure to submit "the required medical release form" as one of GCRTA's reasons for terminating her employment.  (Doc. No. 99-1, PageID# 1895.)  Moreover, Lloyd submitted the 10/4/2016 letter from Dr. Dubey to GCRTA in response to Ferraro's 9/26/2016 letter encouraging her to submit any doctor's clearance to GCRTA.  *See supra.*  For the reasons discussed above, the jury was permitted to consider the 10/4/2016 letter and weigh it against the other evidence adduced at trial.  The Court may not reweigh the evidence or witnesses' credibility in deciding GCRTA's Motion for Judgment as a Matter of Law. *Howe,* 789 F. Supp. 2d at 796 (citing *McDonald*, 898 F.2d at 1163).  The Court concludes that the jury could—and did—reasonably conclude that GCRTA's alleged justification for terminating Lloyd's employment was a pretext for disability discrimination.  Accordingly, GCRTA's Renewed Motion for Judgment as a Matter of Law is denied.

22

**IV.      Conclusion**

For the reasons set forth above, GCRTA's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for Remittitur (Doc. No. 92) is DENIED.

**IT IS SO ORDERED.**


                                                              *s/ Pamela A. Barker*
                                                              PAMELA A. BARKER
Date: April 6, 2022                                           U. S. DISTRICT JUDGE

23