## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ROLANDA LLOYD, | Case No. 1:18-cv-01557-PAB |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Currently pending is Plaintiff Rolanda Lloyd's Motion for an Award of Attorneys' Fees, Costs and Prejudgment Interest Against Defendant.  (Doc. No. 88.)  GCRTA filed an Opposition to Lloyd's Motion on November 29, 2021, to which Lloyd replied on December 5, 2022.  (Doc. Nos. 91, 95.)  For the following reasons, Lloyd's Motion is GRANTED in part and DENIED in part.

## I.     Background

On July 9, 2018, Lloyd filed a Complaint in this Court against GCRTA and Jack Barnett, Jr., setting forth claims for disability discrimination in violation of the Americans with Disabilities Act ("ADA") and Ohio law, retaliation in violation of the FMLA, and gender discrimination in violation of Title VII and Ohio law.  (Doc. No. 1.)  Lloyd subsequently amended her Complaint twice in response to Motions to Dismiss filed by Barnett.  (*See* Doc. Nos. 7, 11, 12, 16, 19, 20.)  The Second Amended Complaint set forth claims against GCRTA for (1) disability discrimination in violation of the ADA and Ohio law; (2) retaliation in violation of the FMLA; and (3) gender discrimination in violation of Title VII and Ohio law, as well as a single claim under Ohio law against Barnett for

aiding and abetting GCRTA's alleged discriminatory conduct towards Lloyd.  (Doc. No. 20 at ¶¶ 62-140.)

On August 27, 2020, the Court granted in part and denied in part GCRTA's and Barnett's Motion for Summary Judgment.  (Doc. No. 53.)  In its Memorandum Opinion and Order, the Court concluded that there was a genuine issue of material fact as to whether GCRTA's disability inquiry was overbroad under the ADA and, therefore, not job-related, or consistent with business necessity.  (*Id.* at PageID# 1230.)  The Court further concluded that there was a genuine dispute as to whether Lloyd's refusal to comply with GCRTA's disability inquiry was a legitimate, nondiscriminatory reason for her removal from work and eventual termination of her employment.  (*Id.*)  Accordingly, the Court denied summary judgment as to Lloyd's ADA and Ohio disability discrimination claims but granted summary judgment in all other respects (including dismissing Barnett as a defendant).  (*Id.*)

The case proceeded to a three-day jury trial on the remaining disability discrimination claims from November 3 to November 5, 2021.  On November 5, 2021, the jury returned a verdict in favor of Lloyd on her ADA and state-law disability discrimination claims.  (*See* 11/5/2021 Transcript, Verdict RD – 147.)  The jury awarded Lloyd no compensatory damages but awarded her $105,000 in backpay and benefits.  (*Id.*)  The Court entered judgment in favor of Lloyd, and against GCRTA, in the amount of $105,000 that same day.  (Doc. No. 86.)

On November 15, 2021, Lloyd filed a Motion for an Award of Attorneys' Fees, Costs and Prejudgment Interest Against Defendant.  (Doc. No. 88.)  GCRTA filed its Opposition on November 29, 2021, to which Lloyd replied on December 5, 2021.  (Doc. Nos. 91, 95.)  Lloyd's Motion is ripe for a decision.

## II.  Motion for Attorneys' Fees and Costs under the ADA

Lloyd moves for an award of attorneys' fees and costs as the prevailing party on her Americans with Disabilities Act (ADA) claim.  (Doc. No. 88-1, PageID# 1461.)  Lloyd argues that, under the "lodestar" methodology, she is entitled to $122,619.00 in attorneys' fees as the prevailing party on her ADA claim.  (Doc. No. 88-1, PageID# 1466.)  She asserts that this award is reasonable because, although she did not prevail on every single claim initially pleaded in her operative Complaint, she obtained a great degree of success on her ADA claim at trial.  (*Id.* at PageID# 1462.)  Moreover, Lloyd argues the billing amounts and number of hours expended are not unreasonable for a discrimination case litigated over the course of three years.  (*Id.* at PageID# 1464.)

GCRTA does not dispute that Lloyd "is a partially prevailing party" under the ADA.  GCRTA also concedes that the Court has the discretion to "award [Lloyd] some attorneys' fees" for the work done on her ADA claim.  (Doc. No. 91, PageID# 1572.)  However, GCRTA argues that the Court should not award Lloyd any attorneys' fees for work on Lloyd's unsuccessful claims, particularly with respect to her failed gender discrimination claims.  (*Id.* at PageID# 1578-80.)  GCRTA urges the Court to reduce the requested attorneys' fees by a reasonable percentage to account for Lloyd's limited success.  (*Id.*)  GCRTA further argues that Lloyd's attorneys' billing records are vague and excessive and should be reduced.  (*Id.*)

The ADA provides that "[i]n any action . . . commenced pursuant to this chapter, the court . . . [,] in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."  42 U.S.C. § 12205.  A plaintiff may be considered a prevailing party if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The

3

Sixth Circuit has emphasized that attorneys' fees under the ADA are discretionary, and the award or denial of such fees is within the sound discretion of the court.  *See Diller v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (abrogated on other grounds as recognized by *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  This calculation has come to be known as the "lodestar."  *See Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 642 (6th Cir. 2009).  The lodestar amount is calculated "by multiplying a reasonable hourly rate by the number of hours expended by attorneys on the case."  *Studio A Entertainment, Inc. v. Action DVD*, 658 F. Supp. 2d 851, 856 (N.D. Ohio 2009) (citing *Hensley*, 461 U.S. at 433).

According to the Sixth Circuit, a district court "has broad discretion to determine what constitutes a reasonable hourly rate for an attorney."  *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013) (citing *Wayne v. Vill. of Sebring,* 36 F.3d 517, 533 (6th Cir. 1994)).  First, the trial court should consider the prevailing market rate, or the "'rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record,'" within the relevant community.  *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)).  In determining the reasonable rate, "[a] district court is permitted to 'rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'"  *Id.* at 822 (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. App'x 496, 499 (6th Cir. 2011)).

4

While there is a strong presumption that the lodestar figure represents a reasonable attorney's fee, the product of reasonable hours times reasonable rate does not end the inquiry. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995). There remain other considerations that may lead a court to adjust the fee upward or downward, including:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).

The "most critical factor" governing the reasonableness of a fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436; *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013). Where a plaintiff obtains excellent results, her "attorney should recover a fully compensatory fee." *Id.* "[A] reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). "Specifically, a court should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised." *Waldo*, 726 F.3d at 822 (citing *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005)). The Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) (internal quotation omitted). Although as a general rule, a trial court must separate unsuccessful claims from those for which attorney's fees may be properly

5

awarded, such a decision is not always possible.  *See Hensley*, 461 U.S. at 435; *see also Braun v. Ultimate Jetcharters, Inc.*, No. 5:12-cv-1635, 2014 WL 3749418, at \*13-14 (N.D. Ohio July 30, 2014).  Instead, when calculating attorneys' fees, where claims are based on common cores of facts or based on related legal theories, "they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced."  *Déjà Vu*, 421 F.3d at 423.  "This is because when several claims arise from a common core of facts, '[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.'"  *Waldo*, 726 F.3d at 823 (quoting *Hensley*, 461 U.S. at 435).

The party seeking attorney's fees bears the burden of proving the reasonableness of the hours billed and must exclude hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  Documentation offered in support of the hours billed "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended" throughout the litigation.  *Imwalle*, 515 F.3d at 553 (internal quotation omitted).  A court may reduce an award where documentation is inadequate.  *Id.*  "Although counsel need not record in great detail each minute he or she spent on an item, . . . the general subject matter should be identified."  *Id.* (internal quotations omitted).

A district court "has broad discretion to determine what constitutes a reasonable hourly rate for an attorney."  *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994).  "A useful guideline in determining a reasonable hourly rate is the 'prevailing market rate[ ] in the relevant community,'"  *Dowling v. Litton Loan Serv. LP*, 320 Fed. App'x 442, 447 (6th Cir. 2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The prevailing market rate is "defined as 'that rate which lawyers of

comparable skill and experience can reasonably expect to command.'" *Id.* (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)).

Upon review of the Motion, the affidavits appended thereto, and the Opposition, the Court grants Lloyd's Motion for Attorneys' Fees and Costs in part and will award Lloyd her attorneys' fees, minus a small deduction for the hours worked exclusively on her unsuccessful gender discrimination claims.

### A. Lloyd's Lodestar Calculation

The lodestar amount is calculated "by multiplying a reasonable hourly rate by the number of hours expended by attorneys on the case." *Studio A Entertainment, Inc. v. Action DVD*, 658 F. Supp. 2d 851, 856 (N.D. Ohio 2009).

#### 1. Reasonable Hourly Rate

The Court concludes that Lloyd's attorneys' hourly rates are not reasonable, and a moderate downward adjustment is necessary.  In support of her Motion, Lloyd appends an affidavit from partner Fred Bean, an Ohio State Bar Association report on the Economics of Law Practice in Ohio in 2019 ("the chart"), and an affidavit from associate Taurean Shattuck.  (*See* Doc. Nos. 88-2, 88-3.) According to the report, the median billing rate for plaintiff-side employment lawyers in Ohio in 2019 was $375.  (*Id.*)  The 25th percentile was $250 and the 95th percentile was $525.  (*Id.*)  Bean, a partner with nearly 11 years of employment law experience, billed at a rate of $400 per hour.  (Doc. No. 88-1, PageID# 1466.)  Barry Murner, whose bar admission date/year, and years and areas of practice generally, and specifically with The Spitz Law Firm as an associate, are not provided via any sworn

7

testimony or other evidence, billed at a rate of $325 per hour.[1]  (Doc. No. 88-2, PageID # 1473.) Taurean Shattuck, who per his Affidavit was admitted to practice law in Ohio in May of 2018 and, after joining The Spitz Law Firm in June 2020 has exclusively represented employees as plaintiffs against their current and former employers, billed at a rate of $250 per hour for work performed in September, October and November, 2021 or approximately 2.5 years after becoming licensed to practice law and 1.5 years after starting with the firm.  (Doc. No. 88-3, PageID #1483; Doc. No. 88-4, PageID #s 1503-1506.)  Corinne Huntley, whose bar admission date/year, and years and areas of practice generally, and specifically with The Spitz Law Firm as an associate, are not provided via any sworn testimony or other evidence, billed at a rate of $250 per hour.[2] Nick Yanchar, a former law clerk and not a licensed attorney, billed 30 minutes to this case at a rate of $150 per hour.  (*Id.*)  The Court concludes these rates are too high for the following reasons.

---

[1] Paragraph 15 of Affidavit Of Fred M. Bean, does include an averment that Attorney Murner was formerly employed with The Spitz Law Firm and handled a substantial portion of the litigation tasks on behalf of Lloyd, up through the summary judgment stage under the supervision of Attorneys Bean and Brian D. Spitz.  In Plaintiff's Motion, it is **alleged** that "Murner is a seasoned attorney who was admitted to practice in Ohio in 1998, and thus, has handled employment-related matters, on and off, for over 20 years."  (Doc. No. 88-1, **PageID # 1466**.)  This allegation is not substantiated with any affidavit, evidence, or other proof.  The Court does note that according to The Supreme Court of Ohio Attorney Directory Murner was admitted to practice law in Ohio in May 1998.  *See* https://www.supremecourt.ohio.gov/AttorneySearch/#/69195/attyinfo (last accessed 4/20/2022).  Accordingly, the Court takes judicial notice of the fact that Murner was admitted to practice law in Ohio in May 1998. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also, e.g., Torre Rossa, LLC v. Liberty Mut. Ins. Co.*, No. 1:20-cv-1095, 2021 WL 4519585, at *1 (N.D. Ohio Sept. 30, 2021) (taking judicial notice of a fact contained in a governmental order issued by the Ohio Department of Health); *Armatas v. Aultman Health Found.*, No. 5:19-cv-00349, 2019 WL 8755139, at *6 n.11 (N.D. Ohio Dec. 19, 2019) (taking judicial notice of a filing date in a related state court action obtained through the Stark County Court of Common Pleas' electronic docket); *Ohio ex rel. Dewine v. Superior Fibers, Inc.*, No. 2:14-cv-1843, 2017 WL 6055159, at *4 n.1 (S.D. Ohio Dec. 7, 2017) (taking judicial notice of the Ohio Secretary of State's identification of a corporation's statutory agent).

[2] Paragraph 13 of Affidavit Of Fred M. Bean, does include an averment that Attorney Huntley was formerly employed with The Spitz Law Firm and handled various pre-litigation and litigation tasks on behalf of Lloyd, under the supervision of Attorneys Bean, Murner and Spitz.  In Plaintiff's Motion, it is **alleged** that "Attorney Huntley, who was admitted to practice in Ohio in 2017, billed at a reduced rate of $250.00."  (Doc. No. 88-1, PageID # 1466.)  This allegation is not substantiated with any affidavit, evidence, or other proof.  The Court does note that according to The Supreme Court of Ohio Attorney Directory, Attorney Huntley was admitted to practice law in the State of Ohio in November 2017. *See* https://www.supremecourt.ohio.gov/AttorneySearch/#/96865/attyinfo (last accessed 4/20/2022).  Accordingly, the Court takes judicial notice of the fact that Huntley was admitted to practice law in Ohio in November 2017. *See* n.1, *supra*.

First, the Court rejects Lloyd's suggestion that because the contingency fee contract called for an hourly partner rate of $550, Bean's hourly rate of $400 is reasonable.  (Doc. No. 88-1, PageID# 1465; *see also* Doc. No. 88-2, PageID# 1479.)  This rate is untethered from the rates listed in any of OSBA's hourly rate charts.  (*See* Doc. No. 88-2, PageID# 1476.)  An hourly rate of $550 would place Bean above the 95th percentile hourly rate of $525 for plaintiff-side employment law specialists, and significantly above the 95th percentile hourly rate of $425 for attorneys with 11 to 15 years of experience.[3]  (*Id.*)  That the contingency fee contract calls for a $550 hourly rate for Bean does not demonstrate that Bean's $400 rate is reasonable.

Second, the Court finds some merit in GCRTA's counterargument that the fees are not reasonable based on Lloyd's attorneys' limited years of legal experience.  (Doc. No. 91, PageID# 1583.)  GCRTA argues that Lloyd's fee award should be greatly reduced because the OSBA survey listed the median billing rate for an attorney with 11 to 15 years of experience (i.e., Bean) as $250 per hour, and for an attorney with 3 to 5 years of experience (i.e., Shattuck) as $200 per hour.[4]  In *Braun v. Ultimate Jetcharters*, the district court recognized that in evaluating the reasonableness of attorneys' fees, the Court should take into account both the years of practice and experience level or expertise in the area of employment law of trial counsel.  The *Braun* plaintiff relied on OSBA's Economics of Law Practice in Ohio in 2013, in support of her attorneys' fees request.  *Braun*, 2014 WL 3749418, at *16.  The court observed that the OSBA's Practice Specialties chart did "not take into account the experience level of the attorneys in the various practice areas."  *Id.*  However, the

---

[3] Indeed, a rate of $550 is significantly above the 95th percentile rate of $525 per hour for attorneys with more than *36 years* of experience.  (Doc. No. 88-2, PageID# 1475.)

[4] The Court notes that the evidence before it only demonstrates that, although Shattuck was admitted to practice law in Ohio in May of 2018, he practiced law beginning with his employment with The Spitz Law Firm in June 2020, meaning that he practiced law for approximately one and one-half years as of the dates of his billing for work in this matter.

9

court also observed that the OSBA's Years in Practice chart  "also has its limitations as it does not take into consideration the fact that attorneys practicing in the area of employment law may generally be able to command a higher hourly rate than those practicing in other areas of law." *Id.*  Ultimately, the *Braun* court reduced the requested attorneys' fees because the plaintiff's three attorneys, Campina-Bacote, Russell, and Dersham, had only been admitted to practice law in 2010, 2008, and 2012 respectively, and the *Braun* trial took place in 2013.  *Id.* at *15.  Indeed, Campinha-Bacote had just *two years* of legal experience when he filed the *Braun* complaint.  *Id.* at *16 n.14.  By the time the matter reached trial, the plaintiff's most experienced attorney had just five years of legal experience.  *Id.*  The *Braun* court reduced Campinha-Bacote's and Russell's rates from $275 to $200, to account for the trial team's "very little trial experience," and Dersham's rate from $250 to $150 to account for "his almost negligible level of experience" as an attorney with only one to two years of experience.  *Id.*

Here, two of Lloyd's attorneys, Bean and Murner, have significantly more legal experience than the *Braun* attorneys.  Bean also has a demonstrated specialty in plaintiff-side employment law. In his affidavit, Bean indicates that he has worked for The Spitz Law Firm, which specializes in plaintiff-side employment and civil rights law, since January 2011.  (Doc. No. 88-2, PageID# 1472.) Bean asserts that he has represented hundreds of employees against their employers and won "multiple" jury verdicts in his clients' favors.  (*Id.*)  By the time Lloyd's trial occurred, Bean had nearly 11 years of experience in employment law—a significant amount of experience.  Thus, the Court concludes that Bean is entitled to an hourly fee that accounts for his 11 years of experience coupled with his specialty in employment law.

10

Based upon the evidence submitted by Lloyd and this Court's "own knowledge and experience in handling similar fee requests . . . ." *Waldo*, 726 F.3d at 821, the Court finds that a reasonable hourly rate for Bean's services is $325. Recently, this Court addressed similar fee requests in the context of employment discrimination cases. In *Brady v. APM Management, LLC, et al.*, No. 19-cv-01303, 2020 WL 4339328, at *1 (N.D. Ohio July 28, 2020), the plaintiff submitted affidavits from both of her employment specialist attorneys in the context of requesting sanctions. ECF. Doc. No. 45, Exs. A and B, Ptf Motion for Attorney Fees, *Brady*, 2020 WL 4339328, at *1. One attorney had 16 years of employment law experience at the time of the *Brady* dispute, graduated *summa cum laude* from his law school, taught as an adjunct professor at a local law school, held various leadership positions in the local legal community, spoke frequently on employment law issues to other practitioners, and received various professional accolades and awards. *Id.* His regular hourly rate was $400 per hour. *Id.* The other attorney was licensed to practice law in 1992 and had 25 years of experience in employment law, held various leadership positions in local and national employment law organizations, served as an employment law arbitrator, spoke on employment law issues, and received various professional accolades and awards. *Id.* Her regular hourly rate was $450 per hour. *Id.* The Court found those rates to be reasonable. *Id.* at *5-6.

Even more recently, in *Gard v. Grand River Rubber & Plastics Co., et al.*, ECF No. 1:20-cv-00125, the Court determined that the reasonable hourly rate for a law firm partner with a similar number of years of experience in practicing employment law as Bean (approximately 11 years at the time of the *Gard* dispute), was $325. He spoke frequently on employment law matters at various bar associations, received various professional awards and accolades, and served as a leader in local and statewide employment law organizations. Also in *Gard*, the Court determined that the reasonable

11

hourly rate for another partner with almost twice the number of years of experience in practicing employment law as Bean has, was $410 through 2021 and $425 effective January 2022.  She began representing plaintiffs in employment disputes in 1998, received a variety of local, state, and national professional awards, served as an arbitrator with the American Arbitration Association, and spoke frequently to national media, as well as various bar associations, on employment law issues.

Bean's affidavit is cursory and does not describe any of his qualifications beyond his approximately 11 years of employment law experience, that he has represented "hundreds" of employees in disputes with their employers, and that he has "obtained multiple jury verdicts" in his clients' favors.  (Doc. No. 88-2, PageID# 1472.)  The *Brady* attorneys had significantly more experience than Bean, and also set out significantly more detail about their expertise in employment law, as well as their professional achievements, to justify their $400-450 hourly rates.  Likewise, the *Gard* attorneys also set forth significant detail about their backgrounds, expertise in employment law, and professional achievements to justify their $325-425 billing rates.  Moreover, one of the attorneys in *Gard* has nearly the same amount of experience as Bean—approximately 11 years at the time of the dispute in *Gard*—and billed at a rate of $325 per hour.  Thus, based on the Court's experience in *Brady* and *Gard*, the Court concludes that Bean's hourly rate should be reduced to $325 to better comport with the prevailing market rate for plaintiff-side employment lawyers in Cleveland.

Regarding Murner's experience, Lloyd asserts in her Motion that Murner "is a seasoned attorney who was admitted to practice in Ohio in 1998, and thus, has handled employment-related matters, on and off, for over 20 years."  (Doc. No. 88-1, PageID# 1466.)  Murner has significantly more legal experience than the *Braun* attorneys.  However, there is no indication that Murner is an employment law specialist.  Any mention of Murner's experience, credentials, or expertise in

12

employment law is absent from Bean's affidavit.  (*See* Doc. No. 88-2, PageID# 1472-75.)  Indeed, in her Motion, Lloyd merely asserts that Murner has handled employment matters "on and off" for 20 years, not that he has honed a specialty practice in plaintiff-side employment law.  The Ohio Supreme Court website demonstrates that Murner was admitted to practice law in the State of Ohio in 1998.  Thus, the Court concludes that Murner is entitled to an hourly fee based primarily on his approximate 23 years of legal experience during the time he worked on this matter, rather than on his purported "specialty" in employment law.  Accordingly, the Court finds that a reasonable fee for Murner's services is $250 per hour or the "Median" rate for lawyers with 16 to 25 years of experience per the chart submitted by Lloyd.

As regards Shattuck, he has been licensed to practice law since May 2018, but did not join The Spitz Law Firm until June 2020.  (Doc. No. 88-3, ¶¶ 4-5.)  There is no indication in the record that Shattuck is an employment law specialist, other than his employment at Spitz, beginning in June 2020.  Thus, Shattuck's hourly fee should not be based on any employment law "specialty" because there is no indication that he was such a specialist.  Accordingly, the Court finds that a reasonable fee for Shattuck's services is $165 per hour or the "Median" rate for lawyers with 1 to 2 years of experience per the chart submitted by Lloyd.

According to Lloyd's Motion, Huntley was admitted to practice law in 2017.  (Doc. No. 88-1, PageID# 1466.)  The Ohio Supreme Court website demonstrates Huntley was admitted to practice law in the State of Ohio in November of 2017, and the evidence presented demonstrates that she billed for time spent in this matter during her first year of practicing law, beginning in February 2018.  Certainly, Huntley cannot be considered an employment law specialist.     Accordingly, the Court

finds that a reasonable fee for Huntley's services should be based on her one year of experience, or $165 per hour according to the charged submitted by Lloyd.

Finally, a brief note about law clerk Nick Yanchar's hourly rate.  According to Bean's affidavit, he added 30 minutes of billed time for Yanchar's work, at a rate of $150 per hour.  (Doc. No. 88-2, PageID# 1472.)  Lloyd's Motion describes Yanchar as a "law clerk."  (Doc. No. 88-1, PageID# 1466.)  Neither Lloyd nor Bean attempt to explain what a "law clerk" is, or if Yanchar had even yet graduated law school at the time he worked on Lloyd's case for 30 minutes.  What is clear is that Yanchar was not a licensed attorney at the time he worked on Lloyd's case.  An hourly rate of $150 is entirely too much, especially considering that the median hourly rate for a licensed *attorney* with one to two *years* of experience is only $165.  The Court will deduct Yanchar's 30 minutes from its final calculation of the lodestar altogether, due to Yanchar's negligible level of experience.

## 2.    Reasonable Number of Hours

Having reviewed Lloyd's counsel's billing statements, the Court concludes the hours billed were largely reasonable, with one exception discussed below, and their descriptions sufficiently detailed.  Over the course of three years, four attorneys billed a total of 360.75 hours[5] to this case over the course of three years, including dispositive motion briefing, two separate mediations, and a three-day jury trial.  (*See* Doc. No. 88-4.)  Although four attorneys billed time to this case, it appears that from approximately October 2018 through January 2021, Murner was the sole attorney handling Lloyd's case.  (*Id.* at PageID# 1488-1502.)  Murner billed a total of 182.4 hours and performed the bulk of the pretrial work on this case alone, including engaging in a Court-mediated settlement discussion, handling all discovery and depositions, and preparing for and drafting Lloyd's Opposition

---

[5] This number reflects the Court's deduction of Yanchar's .5 hours.

to GCRTA's Motion for Summary Judgment.  (*Id.*)  Additionally, Bean billed 124.5 hours, including preparing for and participating in the three-day trial.  (Doc. No. 88-4, PageID# 1502-07.)  Former associate Huntley billed approximately five hours early in the case, performing research and reviewing the case file.  (*Id.* at PageID# 1486.)  The Court concludes that Murner's, Bean's, and Huntley's hours are reasonable for a three-year-long case that culminated in a jury trial.

However, three of Shattuck's time entries give the Court pause.  On 11/3/2021, the first day of trial, Shattuck billed 8.83 hours, with the narrative description "Trial and Hearing Attendance – attend."  (Doc. No. 88-4, PageID# 1506.)  On 11/4/2021 and 11/5/2021, the second and third days of trial, Shattuck billed 9 hours each day with the same narrative description, "Trial and Hearing Attendance – attend."  (*Id.* at PageID# 1507.)  Thus, Shattuck billed 26.83 hours for attending Lloyd's trial altogether.  No doubt Shattuck's contributions in *preparing* for trial were valuable.  For example, on 9/29/2022, he billed 4 hours drafting and/or revising stipulations, jury instructions, and the preliminary statement ahead of trial, and on 10/31/2021, he billed 6.42 hours preparing Lloyd herself for trial.  (*Id.* at PageID# 1503-06.)  However, upon the Court's review of the trial transcripts, Bean handled all aspects of the stand-up trial work, including voir dire, opening and closing arguments and all direct, cross, and redirect examinations.  The Court concludes that Shattuck's time spent attending Lloyd's trial should not be included in the fee award because it is duplicative of the time spent by Bean, who performed the stand-up trial work.  Accordingly, the Court will subtract 26.83 hours from Shattuck's billed hours, for a reduced total of 21.84 hours billed.

Next, the Court concludes that counsel's billing narratives sufficiently identified the activities billed and the general subject matter of their work. Counsel's billing narratives need not "record in great detail how each minute of his time was expended," but should at least "identify the general

15

subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12.  Here, counsel's narratives met this requirement.  For example, on 9/20/2019, Murner spent 0.8 hours reviewing/analyzing Lloyd's file and related documents to respond to GCRTA's discovery requests.  (*Id.* at PageID# 1493.)  On 10/27/2021, Bean spent 0.42 hours drafting/revising edits to stipulations ahead of trial. (*Id.* at PageID# 1505.)  These representative examples identify the activities billed, e.g., analyzing documents or revising stipulations, and the general subject matter of the work, e.g., written discovery or trial preparations.  Thus, the Court concludes the billing narratives sufficiently identify the general subject matter of counsel's time expenditures.

GCRTA points only to the 80.20 hours that Murner spent preparing for and drafting Lloyd's Opposition to GCRTA's Motion for Summary Judgment as excessive.  (Doc. No. 91, PageID# 1582.) GCRTA compares Murner's time on the Opposition to the "incredible" and excessive billing discussed in *Braun*.  (*Id*.)  The Court finds this argument unpersuasive.  The excessive billing discussed in *Braun* is inapposite to this case.  In *Braun*, the plaintiff's three attorneys spent approximately 153.25 hours responding to the defendants' summary judgment motion, which the court found to be excessive for a straightforward discrimination case.  *Braun*, 2014 WL 3749418, at *17.  Moreover, the attorneys' bills were full of incredible examples of daily billing.  *Id.*  For example, one attorney devoted approximately 18.5 hours alone to prepare his opening statement.  *Id.*  Another attorney claimed he billed 23 hours *in a single day*.  *Id.*  Conversely, Murner was the only attorney responsible for preparing for, drafting, and filing Lloyd's Opposition.  (Doc. No. 88-4, PageID# 1498-99.)  Over the course of a month, Murner spent approximately 40 hours reviewing transcripts and documents, and then 40 hours researching, drafting, and revising Lloyd's Opposition.  (*Id.*)  In *Braun*, *three* attorneys devoted 153.25 hours to complete a straightforward opposition—nearly double the

16

amount of time it took Murner *alone* in the instant case.  *Braun*, 2014 WL 3749418, at *17. Additionally, Murner's longest billable entry was 10.90 hours, nowhere near the unbelievable 23-hour day discussed in *Braun*.  *Id.*

### 3.    Adjusted Lodestar Calculation

Given the Court's moderate downward adjustments in counsel's reasonable hourly rates, the Court's deduction of Yanchar's time, and the Court's deduction of Shattuck's attendance at the trial, the Court calculates the revised lodestar to be:

Bean: $325 x 124.51 hours = $40,465.75

Murner: $250 x 182.4 hours = $45,600.00

Shattuck: $165 x 21.84 hours = $3,603.60

Huntley: $165 x 5.17 hours = $853.05

Total: $90,522.40

### B.    Deductions for Unsuccessful Gender Discrimination Claims

The product of reasonable hours times reasonable billable rate does not end the Court's inquiry into whether the lodestar represents a reasonable attorney's fee.  *Bldg. Serv. Local*, 46 F.3d at 1402.  The Court should also consider the degree of success obtained, among other factors. *Hensley*, 461 U.S. at 436.  When possible, a court should separate out unsuccessful claims from those for which attorneys' fees may be properly awarded.  *Id.* at 435.  Here, the Court concludes that a small portion of Lloyd's requested attorneys' fees should be deducted from the overall lodestar because they related exclusively to legal work that Murner performed on Lloyd's unsuccessful gender discrimination claims.

As an initial matter, the Court notes that Lloyd's attorneys obtained significant success on Lloyd's ADA claim, in the form of a favorable jury verdict award of $105,000 in backpay. That Lloyd was unsuccessful on her FMLA and gender discrimination claims at the summary judgment stage does not diminish the final result on Lloyd's ADA claim. Further, Lloyd's ADA and FMLA claims are based on the same "common core of facts," *see Waldo*, 726 F.3d at 823, and much of Lloyd's counsel's time would have been generally devoted to discovering and arguing the legal significance of the shared facts between Lloyd's ADA and FMLA retaliation claims. *See Braun*, 2014 WL 3749418, at *14. These claims cannot be so easily parsed out to "successful" and "unsuccessful" claims, because they are both rooted in similar allegations, facts, discovery, and legal arguments. (*See* Doc. No. 20, ¶¶ 62-75, 91-99.)

However, the Court concludes that Lloyd should not recover for the work billed solely on her gender discrimination claims. *See Hensley*, 461 U.S. at 435 ("[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.") (internal quotation omitted). Lloyd's gender discrimination claims focused on GCRTA's handling of Lloyd's tardiness, use of bathroom breaks, and her meal allowance, while her ADA discrimination claim focused on GCRTA's demand that Lloyd submit to a fitness-for-duty examination related to her PTSD. (*See* Doc. No. 20, ¶¶ 23-53.) Indeed, Lloyd acknowledges in her Reply that her gender discrimination claims "involve[d] some actions that differ[ed] from Lloyd's successful disability-discrimination claims." (Doc. No. 95, PageID# 1625.) The Court agrees with GCRTA that Lloyd should not recover for legal work performed solely on her unsuccessful gender discrimination claims, including the work related to amending her gender discrimination claims in her First and Second

18

Amended Complaints[6] and to deposing GCRTA employees Kenny Jackson, Leroy Fazl, Shevon Holt, Ricardo Wiggins, and Felicia Brooks Williams on 1/8/2020 and 1/9/2020 concerning GCRTA's alleged gender discrimination against Lloyd.  (*See* Doc. No. 91, PageID# 1579-80.)

Based on the Court's review of counsel's timekeeping records, the Court can easily parcel out several billing entries that relate exclusively to the work performed on Lloyd's gender discrimination claims.  Specifically, the Court, in its discretion, will deduct the following entries from the lodestar:

| Date | Staff | Code/Task/Description | Time Spent (Hrs) |
|---|---|---|---|
| 10/12/2018 | MURNERNBA | A104 Review/analyze<br>Review/analyze file regarding Barnett's Motion to Dismiss | 0.2 |
| 10/15/2018 | MURNERNBA | A102 Research<br>Research re political subdivision immuncity and does it apply to GCRTA | 1.00 |
| 10/15/2018 | MURNERNBA | A103 Draft/revise<br>Draft/revise Amended Complaint | 1.00 |
| 10/15/2018 | MURNERNBA | A103 Draft/revise<br>Draft/revise Motion for Leave to file Amended Complaint | 0.80 |
| 1/25/2019 | MURNERNBA | A107 Communicate (other outside counsel)<br>Commicate (other outside counsel) with Mr. Mallamad re motion to dismiss | 0.10 |
| 1/8/2020 | MURNERNBA | A104 Review/analyze<br>Review/analyze file and documents for depositions of 30(b) of RTA | 2.50 |
| 1/8/2020 | MURNERNBA | A109 Appear for/attend<br>Appear for/attend and travel as to depositions of 30(b) of RTA | 5.70 |
| 1/9/2020 | MURNERNBA | A109 Appear for/attend<br>Appear for/attend and travel as to deposition of RTA employees | 5.50 |
| | | **TOTAL** | **17.70** |

---

[6] GCRTA's argument that Lloyd is not entitled to any fees with respect to work on Lloyd's First and Second Amended Complaints is well-taken.  (Doc. No. 91, PageID# 1579.)  However, the Timesheet does not include any entries related to the drafting and/or filing of Lloyd's Second Amended Complaint, other than a 1/25/2019 phone call between opposing counsel that lasted approximately six minutes.  (Doc. No. 88-4, PageID# 1490.)

(*See* Doc. No. 88-4, PageID# 1489-98.)  Murner billed 17.70 hours solely to Lloyd's unsuccessful gender discrimination claims.  Applying the Court's reduced hourly rate for Murner's work, the Court calculates that Murner billed $4,425.00 for work related only to Lloyd's unsuccessful gender discrimination claims.  Thus, the Court will deduct $4,425.00 from the attorneys' fee award.

Additionally, upon the Court's review of Lloyd's Opposition to GCRTA's Motion for Summary Judgment, the Court will reduce Murner's hours billed on researching, drafting, and filing Lloyd's Opposition to account for his work dedicated solely to Lloyd's claims of gender discrimination.  Out of the 25-page brief in opposition, Murner dedicated seven pages, or just over 25% of the brief, to Lloyd's gender discrimination claims.  (Doc. No. 46.)  Murner devotes a portion of page 10, pages 11 and 12, and a portion of page 13 to setting forth facts related only to Lloyd's gender discrimination claims, as well as most of page 22 and pages 23-25 to opposing GCRTA's motion with respect to Lloyd's gender discrimination claims.  (*Id.* at PageID# 954-57, 966-69.)  As discussed above, not only was Lloyd unsuccessful on these claims, but her gender discrimination claims were also factually and legally distinct from her successful ADA claim.  Thus, the "'specific evidence in the record'"—i.e., these seven pages in Lloyd's Opposition—requires this Court to reduce Murner's 80.20 hours to account for work performed solely on unsuccessful claims.  *See Waldo*, 726 F.3d at 822 (quoting *Isabel*, 404 F.3d at 416).  Accordingly, the Court will reduce Murner's 80.20 hours billed for his work on Lloyd's Opposition by 25% to 60.15 hours, and therefore will further deduct an additional $5,012.50 from the attorneys' fee award.

The Court declines GCRTA's request to reduce the remainder of Lloyd's requested attorneys' fees by a reasonable percentage.  First, all time entries dated on or after the Court's 8/27/2020 Memorandum Opinion and Order on GCRTA's Motion for Summary Judgment relate to Lloyd's

20

remaining ADA discrimination claim.  (*See* Doc. No. 88-4, PageID# 1501-07.)  It would be inappropriate to reduce these entries because they relate to the precise claim upon which Lloyd prevailed.  Second, the time entries dated prior to the Court's 8/27/2020 ruling relate to conducting discovery, communicating with Lloyd and/or opposing counsel, and engaging in mediation/settlement discussions.  (*Id.* at PageID# 1486-1500.)  Counsel's work on these activities likely related to multiple of Lloyd's claims at a time.  The Court declines to compartmentalize Lloyd's counsel's work, which involved overlapping facts and discovery, into discrete efforts to advance any one particular claim.  *See Braun*, 2014 WL 3749418, at *14.  Other than deducting the bills for the gender discrimination-specific work, the Court will not apply a "mechanical reduction[ ] in fees based on the number of issues on which" Lloyd prevailed.  *Imwalle*, 515 F.3d at 554.

Finally, the Court will address GCRTA's argument that Lloyd is not entitled to attorneys' fees for her successful discrimination claim under Ohio Rev. C. § 4112 because GCRTA is a political subdivision and is therefore not liable for punitive damages.  (Doc. No. 91, PageID# 1577.)  In her Reply, Lloyd agrees with GCRTA that she is not entitled to attorneys' fees under Ohio Rev. C. § 4112 and emphasizes that she never sought any such fees under Ohio law, *only* under the ADA.  (Doc. No. 95, PageID# 1621.)  The Court does not interpret Lloyd's Motion to seek attorneys' fees under Ohio Rev. C. § 4112.  Nevertheless, the Court clarifies that it awards Lloyd attorneys' fees under the ADA only.  Ohio disability discrimination claims arising under Ohio Rev. C. § 4112 are analyzed under an identical framework to ADA discrimination claims.  *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (analyzing the plaintiff's Ohio Rev. C. § 4112 claim for disability discrimination and her claim for ADA discrimination solely under the ADA).  Thus, for purposes of calculating attorneys' fees, it is impossible to parcel out the facts that supported Lloyd's

successful state-law disability discrimination claim from the facts that supported her successful ADA discrimination claim because these claims are identical.  However, the Court emphasizes that it awards Lloyd attorneys' fees pursuant to the ADA only, and not pursuant to Ohio Rev. C. § 4112.

### C.  Costs

Lloyd also moves for $3,336.10 in costs.  (Doc. No. 88-1, PageID# 1468.)  Lloyd filed an itemized bill of costs on 11/15/2021.  (Doc. No. 87.)  Lloyd's itemized costs include deposition reporting costs, court fees, and witness attendance costs.  (*Id.*)  GCRTA does not dispute that Lloyd is entitled to these costs.  (Doc. No. 91.)  The Court may award Lloyd reasonable costs under the ADA.  *See* 42 U.S.C. § 12205.  Accordingly, Lloyd's costs are granted.

Applying the deductions of $4,425.00 and $5,012.50 for work billed solely with respect to advancing Lloyd's unsuccessful gender discrimination claims, and based on hourly rates this Court has found reasonable, the Court awards Lloyd's attorneys' fees in the amount of $81,084.90 and costs in the amount of $3,336.10.

### III.  Prejudgment Interest under Ohio Rev. C. § 1343.03(C)

Lloyd also moves for prejudgment interest as the prevailing party on her state law disability claim pursuant to Ohio Rev. C. § 1343.03(C).  (Doc. No. 88-1, PageID# 1466, 1468.)

To be entitled under Ohio law to an award of prejudgment interest, the prevailing party must petition the court within 14 days of entry of judgment for such an award.  Ohio Rev. C. § 1343.03(C).  Second, the court must hold a hearing on such a motion, or the parties may agree to waive the hearing.  *Id.*; *Swartz v. DiCarlo*, No.1:12-cv-3112, 2019 WL 2559443, at *1 (N.D. Ohio June 20, 2019).  "Third, to award prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle and, fourth, the court must find that the party to whom the

judgment is to be paid did not fail to make a good faith effort to settle the case." *Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St.3d 638, 658 (1994). "[I]f a party meets the four requirements of the statute, the decision to allow or not allow prejudgment interest is not discretionary." *Id.*

However, the trial court's determination of lack of good faith in settlement negotiations is discretionary. *Id.* "The party requesting prejudgment interest has the burden of proving that it made a good faith effort to settle and that the other party failed to make a good faith effort to settle." *Clay v. Ford Motor Co.,* 215 F.3d 663, 672-73 (6th Cir. 2000), citing *Moskovitz,* 69 Ohio St.3d at 658-59. "If a party has (1) fully cooperated during discovery, (2) rationally evaluated its risks and potential liability, (3) not attempted to unduly delay the proceedings, and (4) in good faith, made a settlement offer or responded to the other party's offer, that party has not failed to make a good faith effort to settle the case." *Clay,* 215 F.3d at 673, citing *Kalain v. Smith,* 25 Ohio St.3d 157, 495 N.E.2d 572, 574 (1986). "If a party has a good faith, objectively reasonable belief that [it] has no liability, [it] need not make a monetary settlement offer." *Id.*

The parties agreed to waive the evidentiary hearing and so the Court will proceed on the evidence before it. (*See* Doc. No. 105.) Lloyd attaches an affidavit from Attorney Bean in which he describes, among other things, settlement efforts made in this case, both before and after he entered an appearance in this matter. (*See* Doc. No. 88-2, ¶¶ 40-43.) GCRTA attaches an affidavit from its own counsel, Jennifer Phillips, to its Opposition. (*See* Doc. No. 91-1.) Accompanying Phillips's affidavit is correspondence between opposing counsel regarding various settlement offers made throughout the pendency of this case. (*See* Doc. Nos. 91-2, 91-3, 91-4, 91-5.)

Upon review of the Motion, opposition, and evidence, the Court denies Lloyd's Motion. The evidence before the Court indicates that GCRTA proffered an early settlement offer of $75,000 prior

to February 2019, which was only $30,000 less than the ultimate jury award. (Doc. No. 91-2.) The evidence further indicates that after this Court denied GCRTA's Motion for Summary Judgment as to Lloyd's disability claims, but granted summary judgment as to Lloyd's FMLA retaliation, gender discrimination, and aiding and abetting claims, Lloyd continued to demand $225,000—an amount *significantly* more than the jury ultimately awarded Lloyd at trial. (Doc. No. 91-3.) According to Bean's 2/26/2021 settlement offer, this $225,000 accounted for approximately $117,000 in back pay and $15,000-20,000 in lost overtime, as well as a significant non-economic damage award, including emotional distress damages. (*Id.*) Lloyd's Reply argument that her $225,000 settlement demand at mediation accounted for "compensation that Lloyd would forgo under OPERS" is unpersuasive. (Doc. No. 95, PageID# 1629.) Nowhere in Bean's 2/26/2021 demand letter does he suggest that the $225,000 demand accounted for any of Lloyd's potential lost retirement income if she resigned from her job. (Doc. No. 91-3.)

Further, the evidence also indicates that, following this Court's ruling on GCRTA's summary judgment motion, GCRTA offered Lloyd $5,000, which it estimated to be the lost wages Lloyd incurred between 8/29/2016, when she was pulled off work, and 9/26/2016, when Scott Ferraro allegedly "narrowed GCRTA's request for medical information." (Doc. No. 91-4.) Though GCRTA ultimately did not prevail on its theory that it offered Lloyd "alternative avenues" to submit medical information, GCRTA consistently pursued this theory throughout trial and in its post-trial briefing. (*See* Memorandum Opinion and Order, Doc. No. 103.) Moreover, the evidence demonstrates that GCRTA increased its settlement offer to $25,000 a few weeks prior to trial. (Doc. No. 91-5.) Under GCRTA's theory of the case, this would have compensated Lloyd for approximately five months of lost wages, or until January 2017. Although $25,000 is far less than the 18 months of back pay that

the jury ultimately awarded Lloyd, it comports with GCRTA's theory of the case that it provided Lloyd with alternative avenues to submit medical certifications in September 2016, March 2017, and June 2017.  (*See* Motion for Judgment as a Matter of Law, Doc. No. 92.)  Thus, the evidence demonstrates that GCRTA evaluated its risks and potential liabilities differently from Lloyd and believed strongly in its own defenses.  Lloyd offers no evidence to suggest that GCRTA's evaluation of its risks and liabilities was irrational.  Therefore, this factor does not weigh in favor of granting prejudgment interest to Lloyd.

Finally, the evidence demonstrates that both sides tendered settlement offers which were rejected by the other.  Given the vast difference between the parties' bargaining positions heading into the March 2021 mediation, settlement was unlikely.  (*See* Doc. Nos. 91-3, 91-4.)  Indeed, both parties acknowledged at the final pretrial conference that "they conferred within the last week and do not see a path to settlement."  (Doc. No. 64.)  Therefore, this factor does not weigh in favor of awarding prejudgment interest.  Moreover, Lloyd offers no evidence that GCRTA failed to cooperate fully in discovery or attempted to unduly delay proceedings.  Accordingly, the Court concludes that Lloyd failed to meet her burden and will deny her Motion for Prejudgment Interest.

## IV.    Conclusion

For the reasons set forth above, Lloyd's Motion for Attorneys' Fees, Costs and Prejudgment Interest Against Defendant (Doc. No. 88) is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**


*s/ Pamela A. Barker*
PAMELA A. BARKER
Date: April 20, 2022                     U. S. DISTRICT JUDGE

25